# UNITED STATES DISTRICT COURT

for the

Central District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched or identify the person by name and address)*<br><br>Three parcels (the SUBJECT APARTMENT PARCELS) located at 6732 Franklin Pl., Apartment 202, Los Angeles, CA 90028 (the SUBJECT PREMISES) | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Case No. **2:20-MJ-05168** |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

> *See Attachment A-2*

located in the Central District of California, there is now concealed *(identify the person or describe the property to be seized):*

> *See Attachment B*

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

     ☒ evidence of a crime;

     ☒ contraband, fruits of crime, or other items illegally possessed;

     ☒ property designed for use, intended for use, or used in committing a crime;

     ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1), 846, 843(b) | Distribution and Possession with Intent to Distribute a Controlled Substance; Conspiracy; Unlawful Use of a Communication Facility |

The application is based on these facts:

> *See attached Affidavit*

     ☒ Continued on the attached sheet.

☐ Delayed notice of _____ days (*give exact ending date if more than 30 days:*_____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/
_____
*Applicant's signature*

Special Agent Duane Vasquez, USPS OIG
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: _____

City and state: <u>Los Angeles, CA</u>

_____
*Judge's signature*

Honorable Steve Kim, U.S. Magistrate Judge
_____
*Printed name and title*

AUSA: Jenna Williams (x2690)

**<u>ATTACHMENT A-2</u>**

<u>PARCELS TO BE SEARCHED</u>

     The following parcels (the "SUBJECT APARTMENT PARCELS"),
which are currently being held by the building manager at the
672 Franklin Place, Los Angeles, California, which were
addressed to or found in the SUBJECT PREMISES and which fall
under the dominion and control of the person or persons
associated with the premises: three parcels, which were
delivered to HARRIS, found in the SUBJECT PREMISES, and which
have been secured by the owner in the manager's office.

**ATTACHMENT B**

ITEMS TO BE SEIZED

The following items are to be seized from the SUBJECT PREMISES and SUBJECT PARCELS described in Attachments A-1, A-2, and A-3, which constitute evidence, fruits, and instrumentalities of violations of 21 U.S.C. §§ 841(a)(1) (distribution and possession with intent to distribute a controlled substance), 846 (conspiracy) and 843(b) (unlawful use of a communication facility, including the mails, to facilitate the distribution of a controlled substance):

     a.   Any controlled substance, controlled substance analogue, or listed chemical;

     b.   Items and paraphernalia for the manufacturing, distributing, packaging, sale, or weighing of controlled substances, including scales and other weighing devices, labels, plastic baggies, food saver sealing devices, heat sealing devices, balloons, packaging materials, containers, and money counters;

     c.   Items used in the packaging of currency for consolidation and transportation, such as money-counting machines, money wrappers, carbon paper, rubber bands, duct tape or wrapping tape, plastic wrap or shrink wrap, and plastic sealing machines;

     d.   United States currency over $1,000 or bearer instruments worth over $1,000 (including cashier's checks, traveler's checks, certificates of deposit, stock certificates, and bonds) (including the first $1,000), and records, documents,

or information pertaining to, obtaining, possessing, using, applications for, or transferring money over $1,000, such as bank account records, cryptocurrency records and accounts;

   e. Documents and records reflecting the identity of, contact information for, communications with, or times, dates or locations of meetings with co-conspirators, sources of supply of controlled substances, or drug customers, including calendars, address books, telephone or other contact lists, pay/owe records, distribution or customer lists, correspondence, receipts, records, and documents noting price, quantities, and/or times when drugs were bought, sold, or otherwise distributed; and

   f. Contents of any calendar or date book; and

   g. Documents or materials reflecting indicia of possession or ownership.

## AFFIDAVIT

I, Duane Vasquez, being duly sworn, declare and state as follows:

### I.  INTRODUCTION

1.   I am a Special Agent ("SA") with the United States Postal Service ("USPS"), Office of Inspector General, and have been a Special Agent for over 18 years. My duties include the investigation of illegal mailings and the receipt of controlled substances, possession of which violates Title 21, United States Code, Sections 841(a)(1), 843(b), and 844. I have participated in the interdiction of illegal drugs shipped through the United States Mail, and have received training in Marijuana identification, criminal investigations, and narcotics trafficking from the USPS, Office of Inspector General and the Drug Enforcement Administration ("DEA"). I am currently assigned to the United States Postal Inspection Service ("USPIS"), North Texas Parcel Task force ("NTPTF") as a Task Force Officer.

### II. PURPOSE OF AFFIDAVIT

2.   This affidavit is made in support of a search warrant for residence of Sean HARRIS ("HARRIS") located at 6732 Franklin Pl, Apt. 202, Los Angeles, CA 90028 (the "SUBJECT PREMISES"), three parcels (the "SUBJECT APARTMENT PARCELS"), delivered to the SUBJECT PREMISES and in the custody of the manager of the SUBJECT PREMISES, and three parcels (the "SUBJECT PARCELS"), seized and in the custody of the United States Postal Inspection Service ("USPIS"), described in Attachments A-1, A-2, and A-3, for the items to be seized described in Attachment B, which are

the evidence, fruits, and instrumentalities of violations of 21 U.S.C. §§ 841(a)(1) (distribution and possession with intent to distribute a controlled substance), 846 (conspiracy), and 843(b) (unlawful use of a communication facility, including the mails, to facilitate the distribution of a controlled substance), as described more fully in Attachment B, which is also incorporated by reference.

3.   The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

### III. <u>SUMMARY OF PROBABLE CAUSE</u>

4.   During the course of this investigation, the Sean HARRIS Drug Trafficking Organization ("DTO") has been identified as a source of supply and distributor for methamphetamine, marijuana, and prescription pill products utilizing the dark web. It has been identified HARRIS can supply large quantities of methamphetamine, marijuana and prescription pill products to his purchasers on the dark web.

5.   Investigation revealed that HARRIS would use Commercial Mail Receiving Agencies ("CMRAs") to facilitate the receipt of supplies from his source of supply in California and

international destinations using fictitious business names.
HARRIS would establish Private Mailbox ("PMB") accounts at UPS
Stores in Texas and California as part of his narcotics
distribution scheme.

6. Through the use of Postal databases, Task Force
Officers ("TFOs") identified approximately 8,400 mailings
suspected to contain methamphetamine, marijuana, and
prescription pills mailed by the HARRIS DTO to include receipt
of parcels containing methamphetamine and prescription pills.

7. On October 6, 2020, search warrants were executed on
three residences, a storage unit, and three CMRAs in Texas
related to the HARRIS DTO. The search warrants resulted in
discovery of large quantities of methamphetamine, marijuana and
prescription pills.  The searches also revealed information that
HARRIS maintained an apartment in Los Angeles, California (the
"SUBJECT PREMISES," at which the "SUBJECT APARTMENT PARCELS"
were delivered), and rented a PMB at a UPS store near his
California residence (which led to the discovery of the "SUBJECT
PARCELS").

## IV. <u>STATEMENT OF PROBABLE CAUSE</u>

### A.   Background of Investigation

8. On or about March 9, 2020, TFOs of the NTPTF,
utilizing postal databases, identified and began investigating
numerous suspicious mailings originating from the Dallas – Fort
Worth area. The parcels were deemed as characteristic of those
containing narcotics and being linked to illegal dark web
activity. All the parcels listed a return address of "FOREVER

STYLIST INC., 238 E JONES ST, SUITE 124, LEWISVILLE TX 75057."
Further investigative inquiries established that FOREVER STYLIST
INC and the above listed address is fictitious.

9.   On or about March 12, 2020, TFOs were provided a
Mailer History Report related to FOREVER STYLIST INC ("FOREVER
STYLIST") for review. The report provided the first acceptance
scan where parcels mailed out by FOREVER STYLIST were processed
for delivery during the period of February 1, 2020 to March 7,
2020. A review of the first acceptance scan disclosed four
postal delivery units processed parcels for outbound shipments.
Three of these postal units, the Hurst Post Office, Hurst, TX
76053, the Rowlett Post Office, Rowlett, TX 75088, and the
Bardin Station, Arlington, TX 76018 had the highest number of
pieces processed during regular business hours.

10.  On or about March 13, 2020, TFOs identified one of
those mailings and coordinated to intercept the parcel. On March
18, 2020, TFOs obtained and executed a federal search warrant
for the parcel, USPS Priority Mail Parcel 9405 5368 9784 6415
0542 92, addressed from "FOREVER STYLIST INC., 238 E JONES ST,
SUITE 124, LEWISVILLE TX 75057" to "SHAWN NEVALA, 7505 NE 51ST
WAY, VANCOUVER WA 98662-6266," which resulted in the seizure of
approximately 5 gross grams of a substance which field-tested
positive for methamphetamine.

11.  On or about March 13, 2020, a search of postal records
returned information on customers in the Dallas/Fort Worth
("DFW") area ordering USPS Priority Mail envelopes (USPS item
#EP14B) like those used by the mailer "FOREVER STYLIST INC."

On this date, review of the records provided a detailed report
of customers ordering the above type envelopes. Three customers
ordered large quantities of item #EP14B, but one did not list a
business name, and instead listed an individual's name: Nicole
VANDERSTORM. Review disclosed VANDERSTORM, residing at 4522
Abbott Ave., Apt. 8, Dallas, TX 75205, placed 10 orders for USPS
Priority Mail envelope item #EP14B during the month of October
2019. Each order consisted of 800 pieces of the above referenced
items for a total of 8,000 pieces.

   **B.   Investigators Identify HARRIS**

   12.   On or about March 18, 2020, TFOs conducted
surveillance at the Rowlett Post Office, 3412 Enterprise,
Rowlett, TX related to the suspicious mailings by fictitious
business "FOREVER STYLIST." On this date, an unknown, white male
wearing a leather jacket and spiked bleached hair dropped off a
cardboard box and a Walmart grocery bag containing 58 pieces of
mail matching the shipper "FOREVER STYLIST" bearing PC Postage
permit number C26321. The empty cardboard box was affixed with a
shipping label addressed to Nicole VANDERSTORM for postal
supplies shipped to her by the USPS. Review of the mailings
disclosed that ten of the fifty Priority Mail envelopes (the
other eight were Priority Mail Express envelopes) listed the
shipper name "PENNY 4 THOUGHTS, 12888 FISH RD., STE. 274, BALCH
SPRINGS, TX 75254."

   13.   On or about March 19, 2020, open source social media
review identified Nicole VANDERSTORM's Facebook and Instagram
accounts. Review of Instagram identified an individual Sean

HARRIS (@versacesean) who matched the image of the person mailing parcels at the Rowlett Post Office on March 18, 2020. The photo was confirmed by the postal clerk who received the parcels and matched to surveillance video from the post office.

14.    On or about March 20, 2020, technical surveillance equipment was installed at the Hurst Post Office, Hurst, TX to capture video of a suspected narcotics mailer. The installation consisted of an inside covert camera to capture the suspected narcotics mailer at the inside collection mailbox and inside retail lobby area.

15.    On or about March 22, 2020, TFOs obtained public records from the Texas Secretary of State which disclosed that HARRIS registered a business as a non-profit named "RECYCLE FOR AMERICA." Review of the records established that Sean HARRIS, Nicole VANDERSTORM, and Mary MCINTYRE are listed as Directors of the above-named entity, which was founded on December 27, 2019.

16.    On or about March 23, 2020, TFOs obtained information that HARRIS rented Private Mailbox ("PMB") 482 at Eagle Postal Center 11, 4101 W. Green Oaks, Suite 350, Arlington, TX. Review of the Postal Service form 1583, Application for Delivery of Mail Through Agent completed by HARRIS disclosed he completed and signed the form on November 2, 2018. Further review disclosed HARRIS received numerous parcels via the USPS, FedEx, DHL, and UPS for the period November 18, 2018 to March 23, 2020. Review of the report disclosed source countries of mail were arriving from Germany, India, Singapore, Great Britain, China, and the United Arab Emirates. TFOs received additional

information that on or about March 2019, HARRIS had a parcel
addressed to him seized by Customs and Border Protection and
found to contain approximately 2.7 gross grams of
methamphetamine.

17. On or about March 31, 2020, TFOs conducted
surveillance of HARRIS at 5030 Savannah Club Drive, Apt. 14102,
Arlington, TX. TFOs learned that the above address was the
residence of Mary MCINTYRE, HARRIS's mother. On this date,
HARRIS was observed coming and going from a rented White Jeep
Cherokee parked in front of the apartment unit next to a white
Mazda 5, bearing Missouri license plate PM6-E6A registered to
HARRIS and MCINTYRE. During surveillance HARRIS was observed
walking from the apartment building with a white trash bag in
his hand and placing it into the nearby dumpster. After HARRIS
departed the area, TFOs recovered the white trash bag and found
items and mail remnants related to similar packaging used by
HARRIS to mail narcotics. Several used Avery labels used to
print PC Postage were found along with strips with numerical and
letter writing such as "7M" along with notes containing dates
and numbers.

18. On or about April 1, 2020, TFOs obtained
information from a bail bond company in Dallas, TX that secured
a bond for HARRIS related to assault on Nicole VANDERSTORM.
Review of records disclosed that HARRIS enlisted the assistance
of an acquaintance, Michael PEARSON, residing at 6113 Jessica
Way, Rowlett, TX to co-sign his bond. While on bond HARRIS was
also required to check-in weekly via an application installed on

his cell phone with the bond company. Review of the check-ins disclosed HARRIS would check-in from VANDERSTORM and PEARSON's residences.

**C. Law Enforcement Seizes Packages Shipped by Multiple Fictitious Entities Linked to HARRIS or Addressed to HARRIS Containing Methamphetamine and Other Controlled Substances**

19. On or about April 3, 2020, the Postmaster of the Hurst Post Office, Hurst, TX notified TFOs that five parcels bearing the name "FOREVER STYLIST INC" were deposited into the inside collection mailbox. TFOs had alerted the Postmaster to review outgoing mail deposited by "FOREVER STYLIST INC" at the Hurst Post Office. On this date, one of these mailings, a parcel addressed to Mike Ritter destined to 1260 Wildwood Lakes Blvd., Apt. 306, Naples, FL 34104-5802 bearing tracking number 9470 1368 9784 6474 8393 31 was seized. On or about April 8, 2020, TFOs obtained and executed a federal search warrant for the seized parcel ending in 9331, which resulted in the seizure of approximately 5 gross grams of a substance which field-tested positive for methamphetamine.

20. On or about April 10, 2020, TFOs conducted surveillance of HARRIS. TFOs observed HARRIS visit the Eagle Postal Center located at 4101 W Green Oaks BLVD STE 305, Arlington, TX 76016. TFOs had previously identified PMB #482 at this location as belonging to HARRIS. While at the Eagle Postal Center, HARRIS picked up multiple parcels. One of those parcels, mailed to HARRIS from California, was suspected by TFOs to contain methamphetamine due to characteristics of the parcel

consistent with drug parcels. HARRIS then left the Eagle Postal
Center and drove directly to MCINTYRE's apartment. TFOs observed
HARRIS unload a large cardboard box from his vehicle and take it
into the apartment. Approximately two hours later, TFOs observed
HARRIS load boxes into his vehicle and depart the apartment
complex. TFOs maintained surveillance of HARRIS and followed him
directly to the Hurst Post Office located at 825 Precinct Line
RD, Hurst, TX 76053. TFOs observed HARRIS remove a large
cardboard box from his vehicle and enter the post office. TFOs
recovered and documented 43 parcels that were mailed by HARRIS
at the Hurst Post Office. All the parcels listed a return
address of "FOREVER STYLIST INC., 238 E JONES ST, SUITE 124,
LEWISVILLE TX 75057." TFOs retained two of the parcels in order
to confirm their contents and returned the remaining parcels to
the mail stream. Continuing on this date, TFOs followed HARRIS
to VANDERSTORM's residence where he was observed entering her
apartment with a black bag. TFOs obtained and executed federal
search warrants on both parcels and seized approximately 11
gross grams of a substance with an appearance consistent with
marijuana, and approximately 8 gross grams of a substance which
field-tested positive for methamphetamine from the parcels
mailed by HARRIS.

21. On April 10, 2020, TFOs identified another parcel in
the mail stream consistent with the parcel HARRIS picked up from
the Eagle Postal Center on that same date which was mailed from
California. TFOs intercepted the parcel and observed it was
addressed to "Sean Harris, 4101 W Green Oaks Blvd # 305-482,

Arlington TX 76016." TFOs obtained and executed a federal search warrant on the parcel, which resulted in the seizure of approximately 664.27 gross grams of a substance which field-tested positive for methamphetamine.

22. On or about April 20, 2020, TFOs, while working in an undercover capacity, made contact with and delivered postal shipping supplies to Nicole VANDERSTORM at 4522 Abbott Ave., Apt 8, Dallas, TX 75205. During the delivery, VANDERSTORM advised that her boyfriend (HARRIS) ordered supplies through her postal account on USPS.com. TFOs engaged VANDERSTORM in conversation where she stated "we're trying to get there" in reference to building their shipping business. On this date, TFOs maintained surveillance of VANDERSTORM's residence and later observed HARRIS arriving in a white Ford Mustang bearing TX license plate number MZP-5262. TFOs observed HARRIS loading the postal supplies into the vehicle.

23. Continuing on this date, TFOs maintained surveillance of HARRIS and observed HARRIS visit a Public Storage facility located at 5342 E Mockingbird LN, Dallas, TX 75206. HARRIS removed a large amount of USPS shipping supplies from his vehicle and placed them inside a storage unit. The USPS supplies transported by HARRIS were consistent with the packaging of parcels seized throughout the investigation by TFOs which contained narcotics. TFOs learned that HARRIS previously acquired the storage unit on December 20, 2019.

24. On or about April 22, 2020, TFOs conducted a trash pull at 6113 Jessica Way, Rowlett, TX related to HARRIS. At the

above address, the white Ford Mustang bearing TX license plate
number MZP-5262 was observed parked in driveway. Also observed
on the curbside in front of 6113 Jessica Way were two trash
containers. The trash yielded a Priority Express Mail envelope
bearing tracking number EJ013084891US listing shipper address as
"Jeff BURNS, PO Box 71352, Tuscaloosa, AL 35407" addressed to
"Sean HARRIS 4101 W Green Oaks Blvd, #305-482, Arlington, TX
76016."

25. On or about April 23, 2020, TFOs received a Mail
Volume Report related to suspected narcotics mailings inbound to
the Dallas Fort Worth Area from California. During review of the
report information, a parcel bearing tracking number 9505 5131
8112 0112 2973 26 was identified going to a CMRA UPS Store
located at 8301 Lakeview Pkwy, Ste. 111, Rowlett, TX 75088.
Further review of postal records disclosed the above parcel was
addressed to "PROTOCOL NETWORKING LTD", PMB 156 at the UPS
Store. TFOs were aware HARRIS received a parcel at his other
CMRA Eagle Postal in Arlington, TX from the same shipper
previously that contained methamphetamine. On this date, TFOs
obtained records from the UPS store in Rowlett, TX, Postal
Service (PS) form 1583, Application for Delivery of Mail Through
Agent and Mailbox Service Agreement for PMB 156. Review
disclosed that PMB was rented by Sean HARRIS on April 16, 2020
in which he listed his company name as "*Protocol Networking
Limited.*" Harris provided his home address as 6117 Jessica Way,
Rowlett, TX 75089. TFOs have knowledge that HARRIS resides at
6113 Jessica Way, Rowlett, TX 75088. TFOs are aware that HARRIS

uses fictitious addresses and/or information when completing applications to hide his residence. The UPS Store also provided video of HARRIS receiving a parcel from known mailer Jeff BURNS in Tuscaloosa, AL on April 22, 2020.

26. On or about April 29, 2020, TFOs received the DEA Southwest Laboratory test results for the seizure of 664.27 gross grams of methamphetamine from HARRIS. The DEA lab report revealed a 98 percent substance purity for methamphetamine hydrochloride.

27. On or about May 6, 2020, TFOs conducted another trash pull at 6113 Jessica Way, Rowlett, TX 75088. On this date, TFOs observed several postal supplies stacked at the front door of the residence. Observed on the curbside in front of 6113 Jessica Way were two trash containers, which TFOs pulled the contents. Review of the trash yielded a Priority Express Mail envelope bearing tracking number EJ327097479US listing the shipper address as "Jeff BURNS Tuscaloosa, AL 35407" addressed to "PROTOCOL NETWORKING LIMITED, 8301 Lakeview Pkwy, Suite 111-156, Rowlett, TX 75088." Also recovered was an Office Depot receipt along with an Epson Ink cartridge box, Avery Label shipping labels number 8168 envelope, and a clear baggie labeled in red ink "Strawberry Lemonade14.21." The red ink lettering is consistent with markings found on seized parcels mailed by HARRIS.

28. On or about May 7, 2020, TFOs were alerted to a parcel bearing tracking number 9405 5368 9784 6614 8037 38, mailed by "Hanging Beauty LLC 2751 Dove Loop RD, Grapevine, TX 76051."

The parcel was mailed to "Hyun MARTIN 1221 N Watson Rd., Room #171, Arlington, TX." TFOs learned that HARRIS began using a new shipper name of HANGING BEAUTY LLC. On this date, the parcel was intercepted. TFOs obtained and executed a federal search warrant for the parcel and seized approximately 8 gross grams of a substance which field-tested positive for methamphetamine.

29. On or about May 10, 2020, TFOs were alerted to a parcel mailed by Jeff BURNS, Tuscaloosa, AL to "PROTOCOL NETWORKING LIMITED 8301 Lakeview Pkwy., Ste. 11-156, Rowlett, TX 75088" bearing tracking number 9505 5116 5721 0129 3915 21. On this date, the parcel was intercepted. TFOs obtained and executed a federal search warrant and seized approximately $2,600 in U.S. currency from the parcel.

30. On or about May 19, 2020, TFOs received notification from Eagle Postal 4101 W Green Oaks, #305, Arlington, TX 76016 that Harris received a FedEx parcel bearing tracking number 392919631199 from Jeffrey Carleton Burns 486 Saddle Club Rd, Jacksonville, AL 36265. TFOs learned that BURNS started sending HARRIS parcels via FedEx which are suspected of containing U.S. currency. TFOs believe BURNS began using FedEx after the seizure of $2,600 in U.S. currency from the USPS parcel.

31. On or about May 28, 2020, TFOs served a subpoena on Public Storage located 5342 E. Mockingbird Lane, Dallas, TX related to HARRIS, VANDERSTORM, and PEARSON. TFOs obtained records that confirmed HARRIS is renting a 5 x 8 storage unit A024 under account #52413137 since December 20, 2019. TFOs reviewed the rental application and found that HARRIS listed

6113 Jessica Way, Rowlett, TX 75089 as his address. HARRIS
listed Mary MCINTYRA (MCINTYRE) as his emergency contact. On
this date, TFOs learned from the property manager that on or
about March 14, 2020 HARRIS was contacted regarding a liquid
that was leaking from his storage unit. TFOs were allowed to
view the outside of HARRIS's storage unit A024 and view the
liquid spill within the walkway and common area. The liquid
appeared to have stained the concrete leaving a white
discoloration that ran into other units. TFOs had previously
followed HARRIS to this location where he was observed storing
postal supplies.

        32.   On June 27, 2020, TFOs received information that
HARRIS was driving a silver Ford Mustang rental vehicle. Further
investigation revealed the vehicle was previously rented by
HARRIS on June 4, 2020. HARRIS provided his Colorado driver's
license as proof of identity when applying for the rental
vehicle.

        33.   On or about July 7, 2020, TFOs received information
from the Hurst Post Office that a parcel bearing the shipper
name "Health'N Wellness" holding parcel tracking number 9470
1368 9784 6858 6209 44 was deposited into the inside collection
mailbox by a known narcotics mailer (HARRIS). Continuing on July
13, 2020, TFOs were alerted that 2 parcels bearing the shipper
name "Centennial Solutions LTD" holding parcel tracking number
9405 5368 9784 6879 7445 31 and "Mallon Park Beauty" holding
parcel tracking number 9405 5368 9784 6879 5556 56 were
deposited into the inside collection mailbox by HARRIS. On July

14, 2020, law enforcement took possession of the three parcels. On July 17, 2020, TFOs obtained and executed a federal warrant on each of the parcels. TFOs found parcels ending in 0944 and 4531 each contained 9 gross grams and 5 gross grams of methamphetamine, respectively. The parcel ending in 5656 contained approximately 11 gross grams of a green, leafy substance with an appearance consistent with marijuana.

34. On or about July 23, 2020, TFOs completed a review of video surveillance conducted at 6113 Jessica Way, Rowlett, TX 75088 for the period of May 8, 2020 to June 6, 2020. TFOs were monitoring the activities at this address related to HARRIS and PEARSON. Surveillance disclosed that HARRIS was observed on several occasions carrying a brown box and grocery bags from the residence and placing them into his rented vehicle or a white Chrysler 200 bearing Rhode Island license plate number JK-891, belonging to VANDERSTORM. Further review established that HARRIS resided at 6113 Jessica Way and would often be seen outside with PEARSON in the driveway. The brown box and grocery bags seen in the surveillance video were consistent with the items HARRIS was seen carrying when depositing narcotics parcels at the Rowlett Post Office and Hurst Post Office. During this period of surveillance, TFOs observed a pattern of activity by HARRIS suggesting he was residing at this location. These activities include arriving at the residence in the evenings, where his vehicle would remain until the next day, when HARRIS would be observed leaving the residence.

35.  On or about July 27, 2020, TFOs conducted an undercover delivery of a second order of postal shipping supplies to Nicole VANDERSTORM. TFOs were alerted that VANDERSTORM had placed an order for USPS shipping supplies, which resulted in four boxes containing a total of 1,600 USPS Priority Mail Flat Rate envelopes "EP14B" shipped to her. TFOs had knowledge that the above referenced envelopes were the type consistently used by HARRIS to ship and conceal narcotics shipments. On this date, an undercover TFO made contact and delivered the packages to VANDERSTORM at 4522 Abbott Ave., Apt. 8, Dallas, TX 75205. VANDERSTORM requested that the packages be left outside her door. During this activity, VANDERSTORM's vehicle, a white Chrysler 200 bearing Rhode Island license plate JK-891, was not observed at the apartment complex.

36.  On this date, TFOs learned that HARRIS rented PMB 173 at the UPS Store located at 4447 N Central EXPY, Ste. 110, Dallas, TX 75205, which is located within several blocks of VANDERSTORM's residence on Abbott Ave. The UPS Store confirmed a parcel from California had arrived for HARRIS on this date and that HARRIS had been in to check his mail prior to the parcel arriving that morning. The California parcel HARRIS was expecting was from a known source of supply of methamphetamine identified during the investigation. TFOs learned that HARRIS had received approximately 13 parcels addressed to "PROTOCOL NETWORKING LIMITED," the business name he uses to receive parcels shipped via USPS, FedEx, DHL, and UPS.

37.   On or about August 8, 2020, TFOs were alerted by an employee at the Hurst Post Office that a known narcotics mailer deposited approximately 84 parcels bearing the business names "Mallon Park Beauty" and "Centennial Solutions LTD." The employee observed an elderly female fitting the description of Mary MCINTYRE depositing the parcels into the inside collection mailbox. TFOs were provided with a photo of a white Mazda 5 bearing Missouri license plate number PM6E6A. TFOs conducted an inquiry and confirmed the Mazda 5 was registered to MCINTYRE and HARRIS. Video surveillance cameras at the Hurst Post Office captured MCINTYRE depositing the parcels into the collection mailbox.

38.   On August 12, 2020, TFOs received information that HARRIS was driving a silver Jeep Wrangler rental vehicle. Further investigation revealed the vehicle was previously rented by HARRIS on August 10, 2020. HARRIS provided his Colorado driver's license as proof of identity when applying for the rental vehicle. TFOs also identified HARRIS via video surveillance as the individual who was physically in the rental facility completing the application for the rental vehicle.

39.   On or about August 12, 2020, TFOs also obtained information from The UPS Store located at 4447 N Central EXPY STE 100, Dallas, TX 75205 regarding a PMB rented by HARRIS on June 3, 2020. TFOs obtained the application for PMB 173, which showed that HARRIS provided his Colorado driver's license as proof of identity when applying for the PMB. TFOs also identified HARRIS via video surveillance as the individual who

17

was physically in the store completing the application for PMB
173.

40. On or about August 18, 2020, a representative of EZ
Out Bail Bonds (the bond holder of a bail bond for HARRIS
relating to a domestic violence charge from July 2019) made
contact with HARRIS on his cell phone. In addition, on this
date, HARRIS completed a mobile check-in with EZ Out Bail Bonds
utilizing this number. As part of the mobile check-in process,
the user must submit photos of him/herself as proof of identity.
TFO's confirmed the submitted photos were of the individual
identified as HARRIS and the GPS location disclosed, he was at
VANDERSTORM's apartment in Dallas, TX.

41. On or about September 18, 2020, the Affiant verified
through employees at Eagle Postal Center, Arlington, TX, the UPS
Store, Rowlett, TX and the UPS Store in Dallas, TX that HARRIS
continuous to receive parcels at his rented PMBs.

42. On or about September 30, 2020, TFOs executed a
federal search warrant on a USPS Priority Mail parcel bearing
tracking number 9405 5368 9784 6115 4797 84 in connection with
an ongoing investigation into the drug trafficking activities of
HARRIS and MCINTYRE. Approximately 7 gross grams of (10 tablets)
of blue colored tablets labeled as Sildenafil 100 mg (Cenforce
100) was seized from the parcel. The presumptive Sildenafil
tablets were concealed inside a USPS Priority Mail cardboard
envelope, which was located inside a blank DVD case, and
secreted inside a yellow bubble mailer.

43.  Through further investigation, TFOs were able to determine that Sean HARRIS and Mary MCINTYRE are the individuals mailing parcels containing narcotics from multiple post offices around the DFW area. To date, mailings associated with the HARRIS DTO are estimated to be approximately 8,400 throughout the United States using various fictitious shipper names and addresses.

      **D.**    **Agents Execute Federal Search Warrant on MCINTYRE, HARRIS, and VANDERSTORM's Residences and Seize Methamphetamine, Marijuana, and Assorted Pills, As Well As Evidence Linking Further Drug Trafficking Activities to the SUBJECT PREMISES, the SUBJECT APARTMENT PARCELS, and the SUBJECT PARCELS in Los Angeles, California**

44.  On or about October 6, 2020, TFOs executed a federal search warrant at the residence of Mary MCINTYRE and her son Sean HARRIS, located at 5030 Savannah, Apt. 14102, Arlington, TX, related to her involvement in drug trafficking activities involving the U.S. Mail. During a search of MCINTYRE's apartment, agents seized packaging supplies, parcels, electronic devices, approximately 1,461 gross grams of presumptive methamphetamine, 1,199 gross grams of presumptive marijuana, and 713 gross grams of assorted pills. One item of interest found during the search was a brown box with brown tape labeled "LATVIJAS PASTS" shipped by Cloud Mining LTD, Skaistkaines 3, rm 50, Riga, Latvia to HARRIS' CMRA PMB for PROTOCOL NETWORKING LTD 8301 Lakeview Pkwy, Suite 111-156, Rowlett, TX and secreted inside a smaller brown box was approximately 40 packets of pills labeled Sildenafil 100 mg (Cenforce 100) with each packet containing 10 pills, each in a white and green box. A review of

electronic evidence from MCINTYRE's cell phone revealed HARRIS acquired a new cell phone number of 323-514-0500 with a Los Angeles area code where HARRIS indicated he wanted a number to show his new residence.

45. Continuing on this date, TFOs executed a federal search warrant at 4522 Abbott Ave., Apt. 8, Dallas, TX 75205 at the residence of Nicole VANDERSTORM related to her involvement in drug trafficking activities along with her boyfriend Sean HARRIS involving the U.S. Mail. During a search of VANDERSTORM's residence, approximately 88 gross grams of marijuana was found along with electronic devices and other documents. One item of interest found during the search was a lease agreement signed on March 31, 2020 by HARRIS in Los Angeles, CA. Review of the lease agreement revealed that HARRIS rented an apartment at 6732 Franklin Pl, #202, Los Angeles, CA (the SUBJECT PREMISES) for the period April 17, 2020 to April 16, 2021.

46. On or about October 6, 2020, TFO's executed an arrest warrant of Sean HARRIS in Denton, TX related to his drug trafficking activities. HARRIS was arrested without incident and a subsequent search incident to arrest resulted in the discovery of narcotics, several credit cards and a business card for The UPS Store #6310 located at 1905 N Wilcox, Los Angeles, CA 90068. Review of the business card revealed a handwritten number 327 on the front of the card.

47. On or about October 8, 2020, USPS OIG agents conducted inquiries at The UPS Store located at 1905 N Wilcox, Los Angeles, CA 90068, which revealed that HARRIS rented PMB #327.

Further review of records obtained established that HARRIS listed himself as the holder and disclosed his new business name as "DARK STAR SYSTEMS LTD" ("Dark Star Systems"). Agents learned that three parcels were being held for Dark Star Systems at this location from international destinations (the "SUBJECT PARCELS"). Two parcels received were shipped via DHL from Riyadh, Saudi Arabia and one parcel was received from Riga, Latvia. The parcel from Riga, Latvia was packaged in a brown box with brown tape labeled "LATVIJAS PAST" and labeled similar to the parcel found during the search of MCINTYRE's residence containing Sildenafil 100 mg (Cenforce 100) pills. The affiant is aware that HARRIS was using several CMRA's (UPS Stores in Rowlett, TX and Dallas, TX and Eagle Postal Centers in Arlington, TX) to receive narcotics using fictitious business names. The parcels listed below were seized on October 14, 2020 from the UPS Store at 905 N Wilcox, Los Angeles, CA 90068:

     a.   SUBJECT PARCEL 1: USPS parcel for Dark Star Systems LTD bearing Latvia Post tracking number RS340508797LV

     b.   SUBJECT PARCEL 2: DHL parcel for Dark Star Systems LTD bearing tracking number 1600336161; and

     c.   SUBJECT PARCEL 3: DHL parcel for Dark Star Systems LTD bearing tracking number 1600334002.

    48. On this same date, USPS OIG agents contacted the building manager at 6732 Franklin Pl, Los Angeles, CA regarding the leased apartment unit #202 (the SUBJECT PREMISES) belonging to HARRIS. The manager confirmed that HARRIS rented the apartment, but no one has been seen coming and going. Only two

21

deliveries have been received and are currently being held in
the manager's storage for HARRIS. One item was a parcel that was
received torn open and the contents appear to be a briefcase.
The other item is a mattress that was delivered for HARRIS.

49. On October 19, 2020, the building owner of 6732
Franklin Pl, Los Angeles, CA contacted me regarding telephone
and email communication received from Nicole VANDERSTORM related
to apartment #202 leased to HARRIS. The owner advised that
VANDERSTORM called and sent an email advising that she has Power
of Attorney for HARRIS to terminate the lease agreement.
According to the manager, VANDERSTORM conveyed that HARRIS was
relinquishing ownership of apartment #202 and that she would
forward a copy of the Power of Attorney. To date, the owner
advised no Power of Attorney has been received. The owner
advised that he entered apartment #202 based on VANDERSTORM's
communication and found the apartment contained two FedEx
parcels and no furniture. The FedEx parcels have been secured by
the owner in the manager's office for HARRIS (collectively with
the parcel containing what appeared to be a briefcase reference
above, the "SUBJECT APARTMENT PARCELS").

50. Based on all the above, I believe there is evidence of
prior and ongoing drug trafficking activity at 6732 Franklin Pl,
Apartment #202, Los Angeles, CA (the SUBJECT PREMISES), as well
as in the following SUBJECT PARCELS:

a.   SUBJECT PARCEL 1: USPS Parcel bearing tracking
number RS340508797LV addressed to Dark Star Systems (seized from
HARRIS's UPS PMB #327);

22

b.    SUBJECT PARCEL 2: DHL Parcel bearing tracking number 1600336161 addressed to Dark Star Systems (seized from HARRIS's UPS PMB #327); and

c.    SUBJECT PARCEL 3: DHL Parcel bearing tracking number 1600334002 addressed to Dark Star Systems (seized from HARRIS's UPS PMB #327).

## V. <u>TRAINING AND EXPERIENCE ON DRUG TRAFFICKING CONSPIRACIES</u>

51.  Based upon my training, experience, and participation in other narcotics investigations and my extensive discussions with experienced agents of the USPIS, DEA, HSI, and local law enforcement agencies, I know that people who deal in illegal controlled substances share various combinations of common characteristics, which are listed as follows:

a.    Significant narcotics traffickers and distributors of controlled substances, such as methamphetamine and marijuana products, frequently maintain on hand large amounts of United States (U.S.) currency in order to maintain and finance their narcotics business;

b.    Narcotics traffickers maintain books, records, receipts, notes, ledgers, airline tickets, money orders, and other papers relating to the transportation, ordering, sale, and distribution of controlled substances; furthermore, I know the aforementioned books, records, receipts, notes, ledgers, etc. are generally maintained where the traffickers have easy and ready access to them, including in their residences, businesses, and automobiles; I know narcotic traffickers will often maintain

23

the aforementioned books, records, receipts, notes, ledgers, etc. using electronic devices, including cell phones;

c.   It is common for significant dealers to secrete contraband, including controlled substances (methamphetamine and marijuana products), in secure locations within their residences, businesses, and automobiles for ready access and to conceal the same from law enforcement authorities;

d.   Persons involved in significant drug trafficking conceal in their residences, businesses, and automobiles, large amounts of currency, financial instruments, precious metals, jewelry, and other items of value and/or proceeds of drug transactions and evidence of financial transactions relating to obtaining, transferring, secreting, or spending large sums of money derived from narcotic trafficking activities;

e.   When drug traffickers amass proceeds from the sale of drugs, the drug traffickers often attempt to legitimize these profits, or otherwise conceal them from discovery by law enforcement officers. To accomplish these goals, drug traffickers often use different techniques, including, but not limited to, foreign and domestic banks and their attendant services, securities, cashier's checks, money drafts, letters of credit, brokerage houses, the purchase of real estate, as well as shell corporations and business fronts to conceal the true ownership and illegal source of the proceeds;

f.   Narcotics traffickers commonly maintain books or papers that reflect names, addresses and/or telephone numbers of their associates in the trafficking organization;

24

       g.   Narcotics traffickers take, or cause to be taken, photographs of them, their associates, their property, and their product. These traffickers usually maintain these photographs in their possession;

       h.   Narcotics traffickers usually keep paraphernalia for packaging, cutting, weighing, and distributing narcotics; and these paraphernalia include, but are not limited to, scales, plastic bags, cutting agents, and other devices used for packaging, to aid in the concealment of the drug for its distribution;

       i.   The courts have recognized that unexplained wealth is probative evidence of crimes motivated by greed, including trafficking in controlled substances;

       j.   Dealers in narcotics often keep firearms, magazines, ammunition, and other weapons in their residences, businesses, and automobiles to safeguard supplies of drugs and the fruits of narcotics dealings;

       k.   Drug traffickers often operate under assumed names in order to conceal their true identities from law enforcement officers and, in so doing, acquire property, services, and personal identification (such as driver's licenses and birth certificates) under their assumed or alias names and that they maintain such documents in evidence of their false identities in their residences, businesses, and automobiles together with evidence of their true identities;

       l.   Drug traffickers commonly conceal their activities from members of the public by transacting their

business in a covert manner and frequently conducting their
business during the nighttime hours when darkness helps conceal
their activities;

m.   Major drug traffickers commonly conduct a
significant amount of their business by using cellular
telephones and normally make frequent calls to direct,
supervise, and coordinate their activities;

n.   It is highly unusual for individuals primarily
engaged in drug trafficking activities to associate in their
businesses or social activities with others not engaged in the
same drug trafficking activities;

o.   Drug traffickers commonly keep their stash of
controlled substances and currency proceeds separate and store
the same in multiple residences, businesses, and automobiles;

p.   Drug traffickers maintain records using the
assistance of computers and other electronic communication
and/or data storage/processing devices. These computers and
electronic items commonly include computer hardware, computer
software, computer related documentation, and computer data
security devices. Moreover, based upon my  knowledge, training,
and experience, I know that searching and seizing information
from computers and other electronic data storage/processing
devices often requires agents to seize most or all electronic
storage devices (along with related peripherals), which commonly
includes handheld computers, electronic organizers, compact
discs, digital video discs, smart media cards, jump drives, zip
discs and floppy discs, to be searched later by a qualified

computer expert in a laboratory or other controlled environment. This is true because the great volume of information which can be stored on computers can take weeks and evens months to sort, and it would be impractical to attempt this type of data search on site. Moreover, searching computer systems for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment; and

q. Further, I know drug traffickers often maintain many of the aforementioned items for long periods of time. For example, drug traffickers will often maintain records associated with their narcotics trafficking for several months, or even years, because they need these records to efficiently operate and organize their drug trafficking operation. As another example, drug traffickers often maintain paraphernalia for packaging, cutting, weighing, and distributing narcotics for long periods of time because narcotics traffickers prefer not to incur the expense of replacing these items on a frequent basis and, further, some narcotics traffickers erroneously believe that such items are not incriminating. In a final example, narcotics traffickers often keep firearms, ammunition, and other weapons for a long period of time because, likewise, they prefer not to incur the expense of replacing these items on a frequent basis and, further, some narcotics traffickers erroneously believe that such items are not incriminating. Accordingly, while some items (such as narcotics) remain at a narcotics trafficker's residence for a short period of time, many of the

27

items needed to operate a narcotics' trafficking conspiracy are maintained at a residence for several months and even years.

## VI. CONCLUSION

52.  For all the reasons above, there is probable cause to believe that the items described in Attachments A-1, A-2, and A-3 contain evidence, fruits, and instrumentalities of violations of 21 U.S.C. §§ 841(a)(1) (distribution and possession with intent to distribute a controlled substance), 846 (conspiracy) and 843(b) (unlawful use of a communication facility, including the mails, to facilitate the distribution of a controlled substance), as described in Attachment B.

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this ____ day of
_____, 2020.


_____

UNITED STATES MAGISTRATE JUDGE

28